Filed 11/26/13  Certified for publication 12/18/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY PORTER,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BOARD OF RETIREMENT OF THE ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM,<br><br>    Defendant and Appellant. | G047507<br><br>(Super. Ct. No. 03CC10643)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Request for judicial notice.  Judgment affirmed.  Request for judicial notice granted.

David H. Lantzer for Defendant and Appellant.

Faunce, Singer & Oatman, Edward L. Faunce and Larry J. Roberts for Plaintiff and Respondent.

This is the third appeal involving payment of disability retirement to plaintiff Mary Porter by defendant Board of Retirement of the Orange County Employees' Retirement System. As with the previous two, this appeal deals with the effective date of plaintiff's disability retirement under of Government Code section 31724 (all further statutory references are to this code unless otherwise stated). It arises out of an amended judgment ordering defendant to find plaintiff entitled to disability retirement from the day following her last day of regular employment, "without any offset for sick leave or workers' compensation temporary disability payments . . . ."

Defendant contends the trial court erred in relying on section 31646.1 to find workers' compensation benefits did not qualify as "compensation" within the meaning of section 31724's statement that a disabled worker's retirement becomes "effective on the expiration date of any leave of absence with compensation to which he shall become entitled under the provisions of Division 4 (commencing with Section 3201) of the Labor Code" and asserts a variety of reasons why the contrary conclusion is correct. Finding none of these arguments persuasive, we grant plaintiff's request for judicial notice of portions of section 31724's legislative history and affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

We incorporate some of facts from *Porter v. Board of Retirement of the Orange County Employees' Retirement System* (June 18, 2008, G038450) (nonpub. opn.) (*Porter 2*) and insert facts relating to this particular appeal where relevant.

"[P]laintiff was injured while driving a bus for the Orange County Transportation Authority. After she was treated, and received workers' compensation, it was determined she was permanently injured and there was no available job for her. She later filed for disability retirement, which was denied. After appeal, a referee

2

recommended defendant be awarded her retirement pay as of the date her application was filed.

"After losing her petition for writ of mandate in the superior court, plaintiff appealed to our court, arguing that, under section 31724, the effective date of her application should have been the day following the last day for which she was paid her regular salary, not the date her application was filed some 13 months later. We agreed and reversed and remanded, directing the superior court to determine if plaintiff had elected to retire on the date of her application, and if so, whether she was required to repay her workers' compensation and sick leave payments. . . .

"The trial court found that plaintiff had elected to retire on the day after her last regular day of compensation. It held that section 31724 directs that retirement is not to begin until the expiration of a 'leave of absence with compensation under Division Four . . . of the Labor Code, or after expiration of any sick leave to which [plaintiff was] entitled.' Relying on the definition of compensation in Division Four, which includes every benefit given to an injured employee under the workers' compensation scheme, it held that plaintiff was not entitled to have disability retirement benefits begin until after her workers' compensation benefits ended. Because the record contained insufficient evidence about the period during which plaintiff received workers' compensation benefits, the court remanded the matter to defendant to make such a determination and also decide whether plaintiff could repay any workers' compensation she had received after the effective date of her retirement. Before any such hearing occurred, plaintiff appealed to this court." (*Porter 2*, *supra*, G038450.) We dismissed the appeal as premature.

Upon remand, the trial court entered a second amended judgment noting defendant's concession during oral argument "that the only type of payment that it seeks to have [plaintiff] repay is temporary disability." It then returned the matter to defendant to determine when and how much plaintiff received in temporary disability benefits, and

3

plaintiff's "ability to repay these benefits."  Defendant adopted the hearing officer's findings that plaintiff received "workers' compensation temporary total disability payments between February 23, 2000 and June 21, 2000" and that she did not believe she could repay that amount.

Plaintiff filed a motion in the superior court seeking to have her disability retirement deemed effective date as of the day after she last received regular compensation, not when her workers' compensation temporary disability pay expired.  She argued she had not been on a "leave of absence with compensation" as required by section 31724 because she was not a safety employee who would be entitled to full salary for a year with contributions made to her retirement plan under Labor Code section 4850.  To help define "compensation" as used in section 31724, she cited section 31646.1, which, among other things, describes an uncompensated leave of absence as one in which the employee receives temporary disability benefits.  Plaintiff asserted her temporary disability payments could not be deemed a "leave of absence with compensation" in light of section 31646.1.

The court agreed, reasoning section 31646.1's reference "to an 'uncompensated leave of absence . . . for which the member receives temporary disability benefits' . . . supports a finding that 'temporary disability benefits' do not qualify as 'compensation.'"  It entered a third amended judgment ordering defendant to set aside its decision denying plaintiff an earlier retirement date and to find her entitled to disability retirement from February 15, 2000, the day following her last day of regular employment, with no "offsets for sick leave or workers' compensation temporary disability payments."

DISCUSSION

1. Introduction

Under section 31724, the retirement of a permanently disabled member of the retirement system shall be "effective on the expiration date of *any leave of absence*

4

*with compensation to which he shall become entitled under the provisions of Division 4 (commencing with Section 3201) of the Labor Code* or effective on the occasion of the member's consent to retirement prior to the expiration of such leave of absence with compensation. . . ." (Italics added.) The parties disagree about the meaning of the italicized language, with defendant asserting its plain meaning requires plaintiff's disability retirement to begin after her workers' compensation benefits expired on June 22, 2000 and plaintiff responding that the phrase applies only to "leaves that expressly provide for compensation, e.g., the leave granted public safety officers pursuant to section 4850[, subdivision] (a) of the Labor Code . . . ."

"'Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 22.) "Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490.)

## 2. Plain Meaning

Defendant contends the plain meaning of the phrase "leave of absence with compensation" in section 31724 shows it applies to plaintiff because "compensation" is defined broadly under Division 4 of the Labor Code (relating to workers' compensation)

5

to include workers' compensation benefits (see Lab. Code, § 3207 ["'[c]ompensation' means compensation under this division and includes every benefit or payment conferred by this division upon an injured employee . . . without regard to negligence"]) and the ordinary meaning of "'leave of absence'" is "'permission to be absent from duty or employment.'" We disagree.

Nothing in section 31724 indicates the above definition of "compensation" is the one to be used in determining "the expiration date of any leave of absence with compensation to which he shall become entitled under the provisions of Division 4 (commencing with Section 3201) of the Labor Code . . . ." Section 31724 does not so state. For example, it does not read "any leave of absence in which the member receives compensation under the workers' compensation act." Nor does it say "any leave of absence in which the member receives compensation as defined under Division 4 of the Labor Code." Rather, it limits the "leave of absence with compensation" to one to which the member "shall become entitled" under Division 4 of the Labor Code. Moreover, as plaintiff notes, "'[t]o seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, *in the legal and broader culture*. Obviously, a statute has no meaning apart from its words. Similarly, its words have no meaning apart from the world in which they are spoken.'" (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114.)

Section 31724 is part of the County Employees Retirement Law of 1937 (CERL) as codified in 1947 (§ 31450 et seq.) Under CERL, "compensation" is defined as "the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages for participation in a deferred compensation plan . . . but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member." (§ 31460; see *Ventura*, *supra*, 16 Cal.4th at pp. 490-491 [citing section 31460] and p. 497 ["[w]hen annual leave is taken as time off, the

6

employee simply continues to receive regular salary or wages without the necessity of performing services. Receipt of that pay is part of the employee's 'remuneration' for past services and is 'compensation'"].) This definition is distinct from the one used in the Workers' Compensation Act. (*Burnelle v. Continental Can Co*. (1987) 193 Cal.App.3d 315, 320 ["'compensation,' as used in the Workers' Compensation Act, is a technical [term] and includes all payments conferred by the act upon an injured employee, and does not have the same meaning as does compensation with reference to payment to an employee of wages or salary for services performed. The latter is remuneration for work done, while the former is indemnification for injury sustained"].)

Defendant asserts CERL recognizes different types of compensation and that section 31724 in particular references three distinctive forms. The first two are "regular compensation" [disability retirement allowance effective when application filed "but not earlier than the day following the last day for which he received regular compensation" (§ 31724)] and "sick leave with compensation" [retirement not "effective until the expiration of such sick leave with compensation" (*ibid*.)]. In *Katosh v. Sonoma County Employees' Retirement Assn*. (2008) 163 Cal.App.4th 56 (*Katosh*), the court held "the term 'regular compensation' in section 31724 includes compensation received for sick leave and vacation when taken by [a member of the retirement system] as time off." (*Id*. at p. 78.) Although *Katosh* also stated "the first sentence of section 31724 [the one being interpreted here] refers to certain temporary disability benefits under the workers' compensation law" (*id*. at p. 66), that was not an issue before it and "'cases are not authority for propositions not considered'" (*Cottonwood Duplexes, LLC v. Barlow* (2012) 210 Cal.App.4th 1501, 1508).

According to defendant, the third type of compensation identified in section 31724 is "compensation to which [a member] shall become entitled to under the provisions of Division 4 (commencing with Section 3201) of the Labor Code." But this construction reads out the phrase "leave of absence," which is modified by the term

7

"compensation," in violation of the rule of statutory interpretation that significance should be given whenever possible to every word and phrase in order to avoid making some words surplusage. (*Rodarte v. Orange County Fire Authority, supra*, 101 Cal.App.4th at p. 22.)

The legal definition of "leave of absence" is "[a] worker's temporary absence from employment or duty with the intention to return." (Black's Law Dict. (9th ed. 2009) p. 910, col. 2; see also *Lewis v. Unemployment Ins. Appeals Bd*. (1976) 56 Cal.App.3d 729, 739 ["'"leave of absence" means that the employee is given permission to be absent from work for a certain time at the end of which the employee will return to his employment status'"].) When that is modified by section 31460's definition of "compensation," a "leave of absence with compensation" under CERL is an employer-authorized absence from work for which remuneration for past services is paid.

Nonsafety persons may receive such paid leaves of absences. (See *Herrera v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 256, 259 [unspecified injured employee paid full salary during period of temporary disability not entitled to temporary total disability payments].) But the only persons "entitled" to them "under the provisions of Division 4 (commencing with Section 3201) of the Labor Code" (§ 31724) are certain law enforcement and firefighters, who receive leaves of absences for up to a year with full pay in lieu of temporary disability payments (see, e.g., Lab. Code, §§ 4800-4810, 4850-4855; see also *Hawthorn v. City of Beverly Hills* (1952) 111 Cal.App.2d 723, 728, fn. omitted ["[w]ages and salary may, under some circumstances, be paid as compensation in lieu of the normal temporary disability payments prescribed by the [workers' compensation] act. Such payments do not constitute salary or gratuities, but are payments of compensation under the act"]). It is undisputed that plaintiff was a bus driver, not a safety officer, and she received temporary disability payments or "indemnification for injury sustained" (*Burnelle v. Continental Can Co.*, *supra*, 193 Cal.App.3d at p. 320) as opposed to remuneration in the form of full "wages or salary"

8

(*ibid*.).  The fact these statutes link "leave of absence" with remuneration and distinguish between full pay and temporary disability pay support a conclusion that temporary disability payments as indemnification for injuries to a nonsafety officer such as plaintiff do not constitute a "leave of absence with compensation" under the CERL.  (§ 31724.)

*3.  Legislative Intent, Objects to be Achieved, Evils to be Remedied, and Related Statutes*

Our construction of section 31724 is sustained by its legislative history. The provision at issue was initially introduced as part of a packet of changes to CERL proposed by the Professional Peace Officers Association.  (Assem. Retired Com. Analysis of Assem. Bill No. 1131 (1973-1974 Reg. Sess.) Jan. 8, 1973, p. 1.)  Among other things, the proposed bill "would provide that a retirement board shall retire a member for a permanent disability effective on the expiration date of any disability leave, or upon consent of the member, prior to such expiration." (*Ibid*.)  This language thereafter appeared in the first draft of the bill (see Assem. Bill No. 1131 (1973-1974 Reg. Sess.) Apr. 9, 1973, p. 2) and was then enacted essentially into its current form (Stats. 1974, ch. 9, § 3).

As it then read, section 31724 required that "a member be 'forthwith' retired upon qualification for disability requirement."  (Agric. & Services, Dept. of Public Employees' Retirement System, Enrolled Bill Rep. of Assem. Bill No. 1131 (1973-1974 Reg. Sess.) Jan. 25, 1974, p. 2 (Enrolled Bill Report).)  The amendment was necessary to "elaborate[] the effective date of retirement as the date the individual uses up accrued compensable leave of absence to which he becomes entitled or on the date the individual consents to retirement before such leave is exhausted."  (Dept. of Finance, Analysis of Assem. Bill No. 1131 (1973-1974 Reg. Sess.) June 18, 1974, p. 1.)  According to the Department of Finance analysis, the bill provides that the disability retirement "of certain safety members . . . shall be effective on expiration date of disability leave of absence or upon consent prior to such expiration" and "allows a 'safety member, a fireman member,

9

or a member in active law enforcement' . . . to treat such problem as job-related for the purpose of receiving a compensable disability retirement due to permanent physical or mental incapacity." (*Ibid*.)  A letter to a member of the California Legislature by a representative of the peace officer organizations confirms "[t]he purpose of striking the word 'forthwith' is to prevent the counties from retiring a member as soon as he is determined to be incapacitated and thus depriving him of the year's salary under [Labor Code s]ection 4850, which some agencies will do. . . ."  (May 9, 1973, letter from William T. Hays to Ronald Kaldor of the California Legislature, p. 2.)  The proposed amendment would "make a disability retirement effective on the expiration of injury leave benefits under [Labor Code s]ection 4850 . . . [and] defer the date until he has received a full year of injury leave under [that statute] . . . unless the member consents to retirement prior to the expiration of those benefits."

Defendant argues the Enrolled Bill Report by the Agriculture and Services Agency shows the purpose of amending section 31724 was to make CERL "more consistent with the Public Employees' Retirement Law ('PERL')."  The report states, "[p]resent [s]ection 31724 compares with [s]ection 21025 in [PERL] . . . [and] contains no equivalent of [former s]ection 21025.5 which prohibits the establishment of an effective date for disability retirement until after disability leave has been paid and/or exhausted.  [¶] This bill would provide for county systems what [former s]ection 21025.5 has provided for the Public Employees' Retirement System [PERS] since 1953."  (Enrolled Bill Report, p. 2.)  Section 21025.5 has been renumbered to section 21165, which reads:  "Notwithstanding any other provision of this article, the retirement for disability of a member, other than a local safety member, with the exception of a school safety member, who has been granted or is entitled to a leave of absence with compensation, *which shall include nonindustrial disability insurance benefits* payable pursuant to Article 5 (commencing with Section 19878) of Chapter 2.5 of Part 2.6, shall not become effective prior to the expiration of the leave of absence with compensation,

10

unless the member applies for or consents to his or her retirement as of an earlier date." (Italics added.)

The italicized language demonstrates the Legislature knows how to include disability benefits within the definition of "leave of absence with compensation" had that been its intent. Although defendant acknowledges "the terminology used in PERL is somewhat different" from CERL in this respect, it asserts "the intent is the same. An employee should not be retired for disability until the expiration of any temporary total disability benefits to which the employee is entitled." It fails, however, to cite any supporting authority, forfeiting the issue. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Moreover, "'it is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.'" (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725; see also *Los Angeles Unified School Dist. v. Workers' Comp. Appeals Bd.* (*Matthews*) (1984) 150 Cal.App.3d 823, 825, 828 [because Labor Code "section 4850 . . . is clearly limited to safety employees," court "decline[d] to insert the additional classification of nonsafety PERS members in the statutory language" of Labor Code section 4853, precluding concurrent payments of temporary disability and PERS retirement to safety officers, and affirmed school custodian's entitlement to "simultaneous recovery of temporary disability benefits for vocational rehabilitation and a disability retirement pension through . . . PERS"]; *Pennington v. Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 55, 59 (*Pennington*) [because court must assume Legislature intended differences in PERL and CERL, including that "under [PERS] an amount equal to workmen's compensation benefits paid is deducted from benefits payable," with "[n]o similar provision . . . found in [CERL]," deputy sheriff not barred from receiving temporary disability after retiring under CERL, even if would have been barred under PERS].)

11

We decline to read "disability benefits" into section 31724. Its absence in section 31724 supports our conclusion that the Legislature did not intend to include disability benefits within its definition of "leave of absence with compensation." For the same reason we reject defendant's attempt to equate section 31724 with Education Code section 24109, which reduces the retirement amount received by a teacher retiring due to service connected disability "by an amount equal to the unmodified benefits paid or payable under a workers' compensation program for the same impairment or impairments that qualify the member for a disability retirement allowance under this part. For purposes of this section, unmodified benefits are limited to benefits for temporary disability, permanent disability, and for vocational rehabilitation paid or payable under the Workers' Compensation Act." Nothing in section 31724 or legislative history of section 31724 mentions temporary disability benefits, in contrast to section 21165 and Education Code section 24109.

Defendant claims the fact section 21165 specifically "excludes local safety members who would receive salary replacement pay" (bold omitted) means that under section 31724 no "employee should . . . be retired for disability until the expiration of any temporary total disability benefits to which the employee is entitled." It relies on the rule that "[s]tatutes are not to be read in isolation, but must be construed with related statutes. [Citation.] When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears." (*In re Jerry R*. (1994) 29 Cal.App.4th 1432, 1437.) But PERS is different from the retirement system under CERL. (See *Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1189; *State Compensation Ins. Fund v. Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 200, 202, fn. 3; *Pennington*, *supra*, 20 Cal.App.3d at pp. 59-60.) Additionally, the legislative intent underlying the language added to section 31724 was to protect safety members from being forced into retirement and depriving them

12

from receiving the year's salary authorized under Labor Code section 4850, which defendant acknowledges agencies had sought to do "in order to save money by moving liability to the retirement systems and reducing the amount the county paid the injured worker."

Defendant maintains the revisions to section 31724 "protect[s] both safety and general employees' disability benefits by preventing counties from engaging in the practice of pushing employees into the retirement systems prior to expiration of temporary disability benefits" given "that temporary total disability payments are two-thirds of the employee's pay" under Labor Code section 4653, which is "significantly greater than the 50% pay many workers receive in service connected disability retirement benefits" under section 31727.4. That may be but plaintiff *chose* to retire prior to the expiration of those benefits. Whether she has to repay those benefits is a separate issue, which we need not decide because defendant stated during oral argument it was not asking plaintiff to do so.

On the other hand, section 31646.1, which is part of CERL and on which the trial court relied to help it determine the meaning of the phrase "any leave of absence with compensation," provides: "A member who returns to active service following *an uncompensated leave of absence* on account of illness or injury arising out of and in the course of employment which exceeds 12 consecutive months *and for which the member receives temporary disability benefits pursuant to the Labor Code during the absence* may receive service credit for the full period in excess of 12 consecutive months during which the member received temporary disability benefits pursuant to the Labor Code upon the payment of the contributions which the member would have paid during that period, together with the interest which the contributions would have earned had they been on deposit, if the member was not absent, provided, that the member has rendered sufficient service, other than the service for which credit in excess of 12 consecutive months is to be purchased pursuant to this section, to meet the minimum service credit

13

requirements for benefits. The contributions may be paid in a lump sum or may be paid on a monthly basis for a period of not more than the length of the period for which service credit is claimed." (Italics added.) We agree the italicized language supports a determination that "compensation" does not include "temporary disability benefits" under section 31724. As defendant acknowledges, "the 'uncompensated leave of absence' in . . . [section] 31646.1 is speaking of regular compensation received for work performed by the employee or leave pay accrued by the employee and taken as time off," i.e., the CERL definition of compensation under section 31460.

Defendant argues the court erred in relying upon section 31646.1 because plaintiff did not cite it until the case was returned to the trial court after remand. But that "confuse[s] the concepts of new issues not presented below . . . with new legal authority for the issue . . . ." (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251.) Because the meaning of the phrase "any leave of absence with compensation" had been previously raised at the administrative level, plaintiff was not precluded from citing new authority to support her interpretation of it at the trial court level, particularly since defendant has cited no authority prohibiting "citation of new *authority* in support of an *issue* that was in fact raised below." (*Ibid*.) Moreover, the issue of whether "any leave of absence with compensation" includes workers' compensation benefits presents "a question of law for the courts, and it was beyond [an administrative agency's] jurisdiction to decide." (*Douda v. California Coastal Com.* (2008) 159 Cal.App.4th 1181, 1199, fn. 7.)

We also reject defendant's contention the "court erred in applying" section 31646.1 because it "has not been adopted for use in Orange County." (See § 31646.1 ["[t]his section shall not be operative in any county until such time as the board of supervisors shall, by resolution adopted by a majority vote, make this section applicable in the county"].) The court was not "applying" the statute per se, but rather was using it to help determine the meaning of "any leave of absence with compensation." For the

same reason, there is no merit to defendant's claim the statute does not apply to plaintiff because it pertains "to retirement system members who take a leave of absence and receive [temporary total disability] for more than 12 months."

Nor has defendant persuaded us that the court's reliance on section 31646.1 was misplaced because it "appears in the service accrual article of CERL and has nothing to do with disability retirement dates." That may be but the point is not where it appears but whether it helps reveal what the Legislature meant by the phrase "leave of absence with compensation," which it does.

Finally, defendant asserts section 31646.1 actually supports its position because it speaks "of regular compensation received for work performed by the employee or leave pay accrued by the employee and taken as time off," whereas under section 31724 an injured employee may receive workers' compensation benefits while "not receiving any regular compensation in the form of wages or sick leave." This argument misses plaintiff's point in citing the statute, which was to show her receipt of temporary total disability benefits does not mean she was on a "leave of absence with compensation."

*4. Public Policy and Double Recovery*

Our conclusion is consistent with the public policy of liberally construing the workers' compensation provisions of the Labor Code "with the purpose of extending their benefits for the protection of persons injured in the course of their employment" (Lab. Code, § 3202) and pension legislation, which "'should be liberally construed resolving all ambiguities in favor of the applicant'" (*Flint v. Sacramento County Employees' Retirement Assn.* (1985) 164 Cal.App.3d 659, 666; see also *Katosh*, *supra*, 163 Cal.App.4th at p. 76 ["'"pension statutes are to be liberally construed in an applicant's favor "to effectuate the purpose of providing benefits to an employee and his family"'"'].) As noted in this case's first appeal, "[s]ection 31451 provides that the purpose of

15

[CERL] . . . 'is to recognize a public obligation to . . . employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation . . . as [an] *additional* element[] of compensation for future services and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed.'" (*Porter v. Board of Retirement of the Orange County Employees' Retirement System* (Dec. 23, 2005, G034319) [nonpub. opn.], italics added.)

Defendant argues "the rules of liberal construction do not apply in cases where an applicant is seeking double recovery for the same injury" and that affirming the judgment will "sanction" just that. It correctly quotes *City Etc. of S.F. v. Workmen's Comp. App. Bd*. (1968) 267 Cal.App.2d 771, 774 (*S.F.*) for the proposition that "appellate courts of this state have repeatedly held that a city may protect itself against paying twice (through the workmen's compensation provisions of the Labor Code and its own retirement system) for the same industrial disability." But it neglects to note a city or county does that by enacting an appropriate charter. To that end, *S.F.* analyzes authorities from "it will be seen that under *appropriate charter provisions* a municipality has broad power to prevent double disability payments to the same person." (*Id*. at p. 780, italics added.)

This follows in line with the "general policy against 'double recovery' for permanent disability when *charter or statutory provisions expressly so provide*." (*Perry v. Workmen's Comp. Appeals Bd.* (1972) 28 Cal.App.3d 828, 831, italics added.) In *S.F.*, a charter "prevent[ed] 'double recovery' by a police officer for one duty-incurred disability through receipt of both disability retirement allowances under [the] charter and benefits payable under the workmen's compensation laws." (*S.F.*, *supra*, 267 Cal.App.2d at pp. 773, 783-785.) Similarly, *Stafford v. L.A. Etc. Retirement Board* (1954) 42 Cal.2d 795, 798, cited by defendant, relied on statutes to hold a deputy sheriff's "disability

16

pensions shall not be cumulative with workmen's compensation benefits awarded for the same disability." Those statutes, under former State Employees' Retirement System, now PERS, have been repealed. (*Pennington*, *supra*, 20 Cal.App.3d at pp. 58-59.)

Here, defendant has not cited any applicable charter or statute precluding plaintiff's ability to recover both her temporary disability benefits under workers' compensation and her disability pension under CERL. Had the Legislature intended to preclude a double recovery, we assume it would have done so as it did by providing in section 31724 that pension payments may not begin until after sick leave payments have ended and in Labor Code sections 4850 and 4853 for safety employees who are members of PERS. (See *Matthews*, *supra*, 150 Cal.App.3d at pp. 826-827 [custodian not precluded from receiving rehabilitation temporary disability indemnity after retirement under PERS where Labor Code section 4853 applies only to safety members]; *Pennington*, *supra*, 20 Cal.App.3d at pp. 59-60 [sheriff's deputy subject to CERL not barred from receiving temporary disability indemnity between time of retirement and time disability became permanent where Labor Code section 4853 applies only to PERS members].)

Defendant maintains plaintiff should be bound by her concession, now withdrawn, that an employee may not "double dip" by simultaneously collecting workers' compensation benefits and retirement income in the form of a pension. But the interpretation of a statute is a question of law for the court and is not governed by a litigant's "concession of its meaning." (*R.J. Land & Associates Constuction Co. v. Kiewit-Shea* (1999) 69 Cal.App.4th 416, 427, fn. 4.)

Moreover, it was defendant's obligation to direct us to a charter, statutory provision, or "a contractual provision between the parties specifically affording a credit to the employer" (*Matthews*, *supra*, 150 Cal.App.3d at p. 829) that would "prevent double disability payments to the same person" (*S.F.*, *supra*, 267 Cal.App.2d at p. 780). "'We are not bound to develop appellants' argument for them.'" (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.) Because defendant failed to meet

17

its burden in this regard, and we are required to resolve all pension legislation ambiguities in plaintiff's favor that are consistent with the language and purpose of section 31724 (*Ventura*, *supra*, 16 Cal.4th at p. 490), we conclude plaintiff is not precluded in this case from receiving temporary total disability concurrently with her disability pension under CERL (see *Matthews*, at pp. 829-830).

DISPOSITION

The request for judicial notice is granted.  The judgment is affirmed. Plaintiff shall recover her costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY PORTER, | |
| Plaintiff and Respondent, | G047507 |
| v. | (Super. Ct. No. 03CC10643) |
| BOARD OF RETIREMENT OF THE ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

Plaintiff and Respondent Mary Porter requested that our opinion filed on November 26, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.