Filed 8/27/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSAFAT RODRIGUEZ, JR., <br><br> Petitioner, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD, CITY OF SANTA CRUZ et al., <br><br> Respondents. | H045698 <br> (W.C.A.B. No. ADJ10830482) |

Petitioner Josafat Rodriguez, Jr. is a veteran of the Gulf War, and served as a police officer for the City of Santa Cruz ("City") from 1995 until 2007. He applied for industrial disability retirement in 2011 with the California Public Employee's Retirement System ("PERS" or "CalPERS") based on his diagnosis of Post-Traumatic Stress Disorder ("PTSD") that was caused in part by his work for the City.

The City disputed whether Rodriguez was entitled to disability retirement through six- and one-half years of litigation resulting in two opinions from this Court that ultimately confirmed Rodriguez's right to the retirement allowance. (*Rodriguez v. City of Santa Cruz* (2014) 227 Cal.App.4th 1443 (*Rodriguez I*); *Rodriguez v. City of Santa Cruz* (Sept. 22, 2016, H042280) [nonpub. opn.] (*Rodriguez II*).)

Following this Court's decision in *Rodriguez II,* the City granted Rodriguez disability retirement, but denied his claim of industrial causation, and he began to receive benefits on December 1, 2016. Rodriguez then requested a finding that his disability was industrial from the Workers' Compensation Appeals Board ("WCAB" or "Board") on April 25, 2017. The Board concluded that Rodriguez's disability was industrial, but that

he was barred from receiving industrial disability retirement benefits because his claim for a finding of industrial causation was untimely under the five-year time limitation set forth in Government Code section 21171.[1]

We find that Rodriguez's claim for industrial causation was timely. We therefore annul the Board's decision.

## I. STATEMENT OF THE FACTS AND CASE

Rodriguez served as a Marine during the Gulf War. During his military service, Rodriguez experienced combat violence, including a mortar attack on his five-man team, which left three men dead.

When Rodriguez returned to the United States in 1995, he was hired as a police officer for the City and worked as a detective in the narcotics and gang task force. In January 2000, Rodriguez injured his back during a nighttime raid and was unable to work for approximately a year. When he returned to work, he was assigned to a role in a limited capacity as a police station duty officer.

In 2005, Rodriguez had back surgery, and was cleared to return to work in July 2006. Rodriguez did not return to work, claiming he was not physically able to perform the necessary duties. In August 2006, Rodriguez filed an application with the City for industrial disability retirement based on his back injury. The City denied Rodriguez's first disability retirement claim in February 2008 following a hearing before an administrative law judge ("ALJ"). The ALJ found that Rodriguez was not credible and that he was not substantially incapacitated from performing the duties of a police station duty officer.

Rodriguez returned to work for two weeks in late March and early April 2007, after being ordered to do so or face termination. He stopped showing up for work and

---

[1] All further unspecified statutory references are to the Government Code.

was again warned that he could be terminated. On June 7, 2007, Rodriguez resigned for health reasons.

After Rodriguez resigned from the police department in 2007, he met with a counselor at the Department of Veteran's Affairs ("Department"). The counselor advised him to apply for veteran's disability retirement. Rodriguez was evaluated by a Department psychologist twice in 2008 and by a psychiatrist in 2010. Rodriguez reapplied to the City for disability retirement in June 2010, claiming he was suffering from PTSD that was caused in part by his work as a police officer. He neglected to check the "industrial" box on the claim form, but included an attachment that stated that his work as a police officer triggered memories of his military service and caused him to experience anxiety.

On September 6, 2011, the City's psychiatric expert, Dr. Mark Snyder provided his first report to the City following his examination of Rodriguez. Dr. Snyder diagnosed Rodriguez with PTSD as a consequence of his experiences with the Santa Cruz Police Department and his time in the Marines. The doctor opined that Rodriguez was substantially incapacitated from the performance of his duties as a police officer.

The City requested that Dr. Snyder reconsider the findings and provided additional information to him, including the ALJ's proposed decision denying Rodriguez's first disability retirement claim in 2008. On September 28, 2011, Dr. Snyder issued a second report criticizing Rodriguez's credibility based on his failure to disclose some work he performed outside the police force and his failure to inform the police department about his psychological problems. Dr. Snyder opined that Rodriguez was not substantially incapacitated.

The City denied Rodriguez's second claim, and the case was tried before an ALJ. The ALJ did not question the accuracy of Rodriguez's PTSD diagnosis; however, she concluded that he failed to establish that he was substantially unable to perform the duties of a station officer as result of his condition. The ALJ found that Rodriguez lacked

3

credibility because he failed to provide all of the relevant facts to the medical professionals who examined him, and he failed to remember the business and volunteer activities that he participated in outside of his police work.

The City adopted the decision of the ALJ and on January 12, 2012, denied Rodriguez's second claim for industrial disability retirement.

Rodriguez petitioned the superior court for a writ of administrative mandate seeking to set aside the City's decision, but the court denied the petition. Rodriguez sought review of the superior court's denial of his writ petition in this court. In *Rodriguez I, supra,* this court found that the superior court erred in its choice and application of the standard of review relevant to the case, and remanded the matter for reconsideration. (*Rodriguez I, supra,* 227 Cal.App.4th at pp. 1454-1455.)

On remand, the superior court found that the basis for Dr. Snyder's change of opinion that Rodriguez was not substantially incapacitated by his PTSD to perform his duties as a police officer was not supported by substantial evidence. The superior court issued a writ of mandate ordering the City to enter a new decision stating that Rodriguez was incapacitated from the performance of his duties as a police officer due to PTSD and to inform CalPERS of its new decision. The superior court also ordered the City to state whether it was disputing industrial causation.

The City appealed the superior court's decision granting the writ of mandate. This court affirmed the order. (*Rodriguez II, supra*, at p. 30.) Following this court's decision in *Rodriguez II*, the City issued a letter on December 1, 2016, notifying CalPERS that Rodriguez had been incapacitated and could not perform his duties as a police officer. However, the City denied that the disability was industrial.

On April 18, 2017, Rodriguez filed an application for determination of his claim for industrial causation with the WCAB.[2] He filed a petition for findings of fact on

_____

[2] Although Rodriguez receives CalPERS disability retirement benefits, he was required to file the application for determination of industrial causation with the Workers'

4

April 24, 2017. Rodriguez argued that his disability was industrial, and that his effective date of retirement was December 1, 2016, the date on which the City admitted that he was disabled and he started to receive retirement benefits. Rodriguez asserted that his petition was timely under section 21174, because it was filed within two years of his effective date of retirement. Rodriguez also argued that if section 21174 did not apply, his claim was timely under the doctrine of equitable tolling.

The City contested the action, asserting that Rodriguez's disability was not industrial, and that his petition for findings of fact was untimely because it was not filed within one year of the date of injury under Labor Code section 5405 for a workers' compensation claim. The City argued in the alternative that pursuant to Government Code section 21171, Rodriguez's claim was untimely because it was not filed within five years of the date of injury.

The Workers' Compensation Judge ("WCJ") issued findings and an order on December 20, 2017, concluding that Rodriguez's disability was industrial, but his claim was barred by both the one-year time limitation in Labor Code section 5405, and the five-year time limitation in Government Code section 21171. The WCJ did not address Rodriguez's assertion that his claim was timely under the doctrine of equitable tolling.

Rodriguez filed a petition for rehearing under Government Code section 21164 with the Board, and on January 29, 2018, the WCJ issued a report recommending that the petition be denied. The WCJ reasserted its prior conclusion that Rodriguez's claim for industrial disability was time-barred by both Labor Code section 5405 and Government Code section 21171.[3] The WCJ also concluded that equitable tolling did not apply

Compensation Appeals Board because that entity is specifically designated under the Government Code to adjudicate CalPERS disputes regarding whether a disability is industrial or nonindustrial. (§ 21166.) See section II. C, *ante*.

[3] In findings later adopted by the Board, the WCJ referenced Labor Code section 5405 and Government Code section 21171 interchangeably as time limitations that precluded Rodriguez's claim for a finding of industrial causation. Labor Code

5

because Rodriguez had not given timely notice of his industrial claim to the City and as a result, the City had been prejudiced in its ability to gather evidence.

The Board adopted the WCJ's report and recommendations, and denied Rodriguez's petition for rehearing on March 2, 2018.

Rodriguez filed a timely petition for a writ of review of the Board's denial of his petition for rehearing with this court on April 2, 2018.  (§ 21168.)  We granted the writ of review on October 16, 2018.

## II. DISCUSSION

This case presents an issue of first impression requiring us to interpret and reconcile various provisions embedded within the Government Code and to determine as a matter of law what time limitation applies to CalPERS claims for industrial disability retirement benefits.

The City argues that Rodriguez's industrial disability claim is time-barred by Government Code section 21171, which sets forth a five-year time limitation from the date of a claimant's injury.

Rodriguez asserts that his claim for industrial disability is timely under Government Code section 21174, which requires that a petition to determine whether a disability is industrial must be filed within two years of the effective date of the claimant's retirement.  Rodriguez argues in the alternative that if his claim is barred by the five-year limitation set forth in section 21171, it should be considered timely under the doctrine of equitable estoppel.

---

section 5405 provides that *workers' compensation claims* must be filed within one year of the date of injury.  At oral argument in this court, all of the parties conceded that the one-year time limitation set forth in Labor Code section 5405 is not applicable to Rodriguez's claim for industrial causation for the purpose of *CalPERS* disability retirement.

6

### A. Standard of Review

Here, neither party disputes the WCJ's determination that Rodriguez's disability is industrial in nature. Therefore, there are no evidentiary findings in dispute in this appeal. The issues before us solely involve questions of law and the interpretation of the various statutes setting forth time limitations for industrial disability retirement claims. We thus apply a de novo standard of review. (See, e.g., *Baxter v. State Teacher's Retirement System* (2017) 18, Cal.App.5th 340, 353 [interpretation of statutes presents pure questions of law subject to de novo review].)

### B. Rules of Statutory Construction

Rodriguez and the City disagree regarding the application of various statutes that they argue establish time limits for the filing of CalPERS industrial disability retirement claims under the Government Code. As we are required to construe the meaning of various code sections, we apply well known interpretive precepts to the statutes in question. "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1369, 1387-1388 (*Dyna-Med*).)

We are governed by an additional rule of statutory construction specific to laws governing pension benefits: if an ambiguity or uncertainty exists in the context of

pension statutes, statutory provisions are to be liberally construed in favor of the pensioner " ' "to effectuate the purpose of providing benefits to an employee and his family.  [Citation.]" [Citation.]' [Citation.]" (*Katosh v. Sonoma County Employees' Retirement Assn.* (2008) 163 Cal.App.4th 56, 76 (*Katosh*); see also, *Porter v. Board of Retirement of Orange County Employees Retirement System* (2013) 222 Cal.App.4th 335, 348 (*Porter*).)

### C.  Government Code Time Limitations for Claims of Industrial Disability

The laws governing CalPERS disability retirement are encompassed in Government Code sections 21150, et seq.  There are three sections of that statutory scheme that are relevant to our analysis:  section 21174, which provides that a claim for industrial disability must be made within two years of the effective date of retirement; section 21166, which provides that the Board has jurisdiction over a determination of industrial causation; and section 21171, which provides that the Board has continuing jurisdiction to "rescind, alter, or amend" a determination of industrial disability for five years from the date of injury.

Here, the date of Rodriguez's injury as determined by the Board, and agreed upon by all of the parties, was September 13, 2011, when Rodriguez learned through the report of the Department's doctor that his police work for the City had triggered his PTSD symptoms.  Following extensive litigation, the City granted Rodriguez's disability retirement in 2016.  Rodriguez filed a request for a determination of industrial causation pursuant to section 21166, which governs the determination of industrial disabilities, on April 25, 2017, six years after the date of injury.

When it reviewed the WCJ's opinion denying Rodriguez's claim, the Board agreed that Rodriguez's request for a finding of industrial causation was barred because it was filed outside of the five-year time limitation as stated in section 21171.  That section provides:  "The Workers' Compensation Appeals Board shall have *continuing jurisdiction* over its determinations made under Section 21166 and may at any time

8

within five years of the *date of injury*, upon notice and after an opportunity to be heard is given to the parties in interest, *rescind, alter, or amend the determination*, good cause appearing therefor." (§ 21171, emphasis added.)

Emphasizing this code section over others in the statutory scheme, the City argues that section 21171's language, "five years of the date of injury," clearly indicates that a CalPERS member must file a claim for industrial causation within that five-year time period or the claim will be barred from consideration by the WCAB. Applying the five-year limitation period in section 21171 to commence on the agreed upon date of Rodriguez's injury, which was September 13, 2011, the last day upon which Rodriguez could have filed his claim for a finding of industrial causation would have been September 13, 2016. Rodriguez exceeded this date by seven months when he filed his request on April 25, 2017. The City therefore asserts his claim was time-barred by the five-year limitation period set forth in section 21171.

We are not persuaded. We conclude that the City and the Board's interpretation of section 21171 is flawed because it focuses on only one portion of the statute, the phrase "five years of the date of injury," and overlooks other significant language that further informs a sensible reading of the section. We note first that the language "five years of the date of injury" in section 21171 defines the period of time during which the Board has "continuing jurisdiction" over "its determinations made under Section 21166," and does not on its face define the period in which a CalPERS member must make an industrial causation claim. Additionally, that "continuing jurisdiction" confers on the WCAB the ability to "at any time within five years of the date of injury . . . rescind, alter, or amend the determination, good cause appearing therefor." (§ 21171.) Within the context of the statute, it is clear that the section provides the WCAB the ability to amend its own determinations related to industrial disability within five years of the claimant's injury date. The language does not establish any requirement that a CalPERS member file a

9

request for determination of industrial causation of a disability within five years of the date of his or her injury.

Considering the plain meaning of the words in the statute, we observe that "rescind" is defined as "to take away,"[4]; "alter" means "to make different without changing into something else,"[5]; and "amend" means "to change or modify (something) for the better."[6]  Thus, the words "rescind, alter, or amend," by definition mean to change something already in existence, that has occurred in the past, or that has already been accomplished.  Section 21171 grants the Board "*continuing*" jurisdiction to "*rescind, alter, or amend*" its own finding of industrial or nonindustrial causation that, under the plain meaning of those words, has already occurred.  (§ 21171, emphasis added.)  Based on our reading of the statute, we agree with Rodriguez that the five-year time limit stated in section 21171 does not apply to his case, because the WCAB itself had not made an initial finding of industrial or nonindustrial disability for the Board to "rescind, alter, or amend."

We also agree with Rodriguez that the proper time limitation applicable here is found in section 21174, which provides that a petition to determine whether a disability is industrial must be filed within two years of the "effective date of the member's retirement."  That section reads, in full:  "If it is not claimed that the disability is industrial or if the claim is made and the member so requests, the board shall proceed with retirement and with the payment of the benefits as are payable when disability is not

_____

[4] (Merriam-Webster Dict. Online (2019) < https://www.merriam-webster.com/dictionary/rescind > [as of Aug. 23, 2019], archived at < https://perma.cc/GGM7-YJ8S >.)

[5] (Merriam-Webster Dict. Online (2019) < https://www.merriam-webster.com/dictionary/alter > [as of Aug. 23, 2019], archived at < https://perma.cc/TXL7-TXQL >.)

[6] (Merriam-Webster Dict. Online (2019) < https://www.merriam-webster.com/dictionary/amend > [as of Aug. 23, 2019], archived at < https://perma.cc/52T7-MRQA >.)

10

industrial. If the Workers' Compensation Appeals Board *subsequently* determines that disability is industrial, an amount equal to the benefits paid shall be deducted from the benefits payable under this system because of the determination. No additional benefits shall be payable, however, because disability is determined to be industrial unless the application for that determination is filed with the Workers' Compensation Appeals Board or in the office of this system in Sacramento, for transmission to the Workers' Compensation Appeals Board *within two years after the effective date of the member's retirement*." (§ 21174, emphasis added.) Section 20060 defines "retirement" as "the granting of a retirement allowance under this part." (§ 20060.)

Rodriguez asserts that while his date of injury was September 13, 2011, his effective date of retirement was December 1, 2016, when the City finally granted Rodriguez disability retirement and he began to receive his "retirement allowance" as defined in section 20060. Under section 21174, Rodriguez's petition for industrial causation, filed five months later on April 25, 2017, therefore was timely and was brought within the two-year period set forth in the statute.

The City dismisses the contention that the two-year limit set forth in section 21174 applies here, arguing that the statute is only relevant to the procedure for the distribution and calculation of disability retirement benefits. We agree that section 21174 does describe disability retirement payment options, allowing a CalPERS member to receive that portion of the disability retirement benefits while the issue of industrial causation is determined. (§ 21174.) "If it is not claimed that the disability is industrial or if the claim is made and the member so requests, the board shall proceed with retirement and with payment of benefits as are payable when disability is not industrial." (*Ibid*.) If the WCAB "subsequently determines that disability is industrial, an amount equal to the benefits paid shall be deducted from the benefits payable under this system because of the determination." (*Ibid*.) But the language of the statute also clearly sets a deadline for a CalPERS member to make the industrial causation claim: "No additional benefits shall

11

be payable, however, because disability is determined to be industrial unless the application for that determination is filed with the Workers' Compensation Appeals Board . . . within two years after the effective date of the member's retirement." (*Ibid.*) In other words, if a member wants to receive payment for a disputed industrial disability, a claim must be filed with the WCAB within two years of the date of the member's retirement.

The City contends that section 21174 has no relevance to the jurisdiction of the WCAB to determine industrial disability claims. Again, we disagree. By requiring a CalPERS member who claims an industrial cause of his or her disability to file "the application for that determination" with the "Workers' Compensation Appeals Board . . ." within two years of the date of retirement, we conclude that the Legislature is referring to the determination of industrial injury that the WCAB is required to render under section 21166 when such a claim is disputed. (§ 21174.) Under section 21166, if the member claims that a disability is industrial, and the "board, or in the case of a local safety member by the governing body of his or her employer" disputes that claim, the WCAB "shall determine whether the disability is industrial." (§ 21166.) That same language appears in section 21174 and requires a claimant to file "an application" for a "determination" of "industrial" causation with the WCAB. (§ 21174.) It is reasonable to infer that the use of this identical language indicates that the Legislature is referencing in section 21174 the WCAB's authority to determine a disability is industrial or nonindustrial under section 21166, a section that provides the WCAB with exclusive authority to decide disputes related to industrial disabilities for CalPERS members.

Finally, the City argues that an interpretation of section 21171 that does not strictly enforce the five-year limitation renders the language "five years [from] the date of injury," surplusage, noting that such construction "is to be avoided." (§ 21171; *Dyna-Med.*, *supra*, 43 Cal.3d at pp. 1387-1388.) As we have concluded that the five-year limitation applies to the WCAB's jurisdiction to modify its initial decision of industrial or

12

nonindustrial causation, we do not find the language within section 21171 to be surplusage. The section simply places a limitation on the WCAB's ability to change its initial determination that a disability is or is not industrial within what the Legislature deems a reasonable period of time, namely, five years after the injury. We conclude that a reasonable reading of section 21171 means that if a claimant, such as Rodriguez, applies for a determination of industrial causation within two years of retirement in compliance with section 21774, but more than five years after the injury, the WCAB cannot modify its determination that an injury is industrial or not. There is nothing in the language of the section that precludes the WCAB from making the initial determination of industrial causation.

The language of section 21174 is clear on its face. It states that a retiree claiming an industrial disability that is disputed will not receive the additional benefits "unless the application for that determination is filed with the Workers' Compensation Appeals Board or in the office of this system in Sacramento, for transmission to the Workers' Compensation Appeals Board within two years after the effective date of the member's retirement." (§ 21174.) As section 21171 applies only to rescind, alter or amend an industrial determination that has been made previously, section 21174 is the sole Government Code section that establishes a mandatory timeframe under which an employee must apply for that industrial determination. This interpretation of the two statutes respects the plain meaning of the language of each section, while harmonizing them within the CalPERS pension scheme consistent with principles governing statutory interpretation. (*Dyna-Med, supra,* 43 Cal.3d at pp. 1387-1388.)

### D. *Abraham v. Workers' Comp. Appeals Bd.*

There are no California Court of Appeal or California Supreme Court decisions addressing whether the time limitation set forth in section 21171 bars a claim for an initial finding of industrial causation made more than five years from the date of injury. As a result, the City and the Board rely on the California Workers' Compensation

13

Appeals Board case of *Abraham v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.Comp.Cases 1152 (*Abraham*) in support of their argument, asserting that it is analogous to the case at bar and should persuade us to impose the same result.

Abraham worked as a police officer for the City of Buena Park from 1987 through 1989, and claimed that her work had caused her an industrial psychiatric injury. Her employer denied the claim. Abraham then requested disability retirement through CalPERS based on a psychiatric condition, and filed a civil suit against her employer for sexual harassment, discrimination, retaliation, and intentional and negligent infliction of emotional distress. After a jury trial, Abraham received a civil judgment in her favor in her suit against her employer.

In March of 1997, Abraham's employer granted her CalPERS disability retirement request. On June 17, 1997, Abraham filed a petition with the Board pursuant to section 21166 requesting a finding of industrial causation. The Board denied the request in part because it was not filed within five years of the date of injury pursuant to section 21171.

Abraham sought a writ of review arguing in part that the Board did not have jurisdiction to decide industrial causation until the disability had been determined by her employer in March of 1997. Although Abraham's June 1997 petition for a finding of industrial causation was filed more than five years after the date of her injury in 1989, she argued that it was timely because it was filed three months after her employer's decision granting her disability retirement. The Fourth District Court of Appeal summarily denied Abraham's petition. The City asks us to rely on the reasoning of *Abraham* here.

While it is permissible to cite California Workers' Compensation Appeals Board Cases, writ-denied summaries of decisions by the Board such as *Abraham* have no stare decisis effect and we are not bound by them. (*Parker v. Workers' Comp. Appeals Bd.* (1992) 9 Cal.App.4th 1636, 1646; *Wings West Airlines v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1053, fn. 4.) We find the Board's decision and the Court of Appeals' summary denial of Abraham's writ petition are of little assistance in

deciding the present case. In particular, while the *Abraham* summary indicates that the Board found the five-year time limitation set forth in section 21171 barred Abraham's claim for industrial causation, it does not appear that the Board considered the meaning and implication of the words "rescind, alter or amend" in section 21171. Nor does it appear that the Board considered section 21171 in the context of the CalPERS disability retirement scheme as a whole, which includes sections 21174 and 21166. We thus find *Abraham* unpersuasive.

In addition, the summary nature of the Court of Appeal's denial of Abraham's writ petition provides us with no understanding of why that court determined that the petition was without merit, or if it indeed reached that issue, rather than ruling on some procedural or technical basis. We decline to speculate as to our colleagues' reasons for the denial. As a result, we find that neither the summary of the decision by the California Workers' Compensation Appeals Board in *Abraham*, nor the summary denial of Abraham's writ petition, alters our analysis of the proper interpretation of the time limitation provisions of sections 21171 and 21174.

### E. *Appropriate Construction of Pension Statutes*

The City asserts that the time limitation provisions of pension law should not be liberally construed, and distinguishes those cases where liberal construction of pension statutes has been applied from the case before us. For example, the City distinguishes *Katosh*, noting that the case dealt with the effective date of retirement and the meaning of regular compensation, not the issue of the time limitation for bringing a claim. (*Katosh*, *supra*, 163 Cal.App.4th at p. 76.) The City also distinguishes *Porter*, noting that in *Porter* the court considered the issue of what constitutes an effective date of retirement rather than the time limitation for bringing a claim. The City argues that construction of pension statutes " 'must be consistent with the clear language and purpose of the statute.' " (*Porter, supra*, 222 Cal.App.4th at p. 340.) Since time limitation provisions are designed to prevent stale claims, the City argues that liberal construction of the time

15

limitation provisions within the statutory schemes governing the award of pension benefits is inappropriate.

Our analysis is based on the "usual, ordinary import" of the words in the statutes, "according significance . . . to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med*, *supra*, 43 Cal.3d at p. 1387.) While we recognize the importance of the time limitation provisions to eliminate dilatory claims, the overriding precept governing pension schemes as a whole is that they " '. . . are to be liberally construed in an applicant's favor "to effectuate the purpose of providing benefits to an employee and his family. [Citation.]" [Citation.]' [Citation.]" (*Katosh, supra,* 163 Cal.App.4th at p. 76.) Although *Katosh* and *Porter* addressed the issue of the effective date of retirement and not the time limitation to bring a claim, the policy of liberal construction of pension statutes in favor of the pensioner applies to all aspects of the CalPERS disability statutory scheme, including time limitation provisions, and thus requires us to construe them to effectuate the purpose of providing benefits to the employee where appropriate.

CalPERS disability retirement is intended to compensate disabled members who are unable to continue working. Rodriguez sought disability retirement from the City commencing in 2011 when he discovered that his PTSD was caused in part by his service as a police officer. Rodriguez was finally granted disability retirement on December 1, 2016, after significant opposition from the City and years of litigation. Rodriguez's request for an initial determination of industrial causation of his disability was filed on April 25, 2017, five months after he first began receiving retirement benefits on December 1, 2016.

We conclude that the WCAB erred as a matter of law when it found that Rodriguez was time-barred from asserting his claim and denied his petition for rehearing.

16

The Board's erroneous reliance on Government Code section 21171 was incorrect as a matter of law and therefore, should be annulled.[7]

### III.    DISPOSITION

The Board's March 2, 2018, opinion and order denying rehearing is annulled, and the matter is remanded to the Board with directions to grant Rodriguez's claim for industrial causation.  Costs in this original proceeding are awarded to Rodriguez.

---

[7] Because we annul the decision of the WCAB based on legal error in its choice and application of the statute of limitations relevant to Rodriguez's claim, we do not reach his contention that his claim should be allowed under the doctrine of equitable tolling.

_____
Greenwood, P.J.

WE CONCUR:


_____
 Bamattre-Manoukian, J.


_____
 Danner, J.


Rodriguez v. Workers' Compensation Appeals Board
No. H045698

Workers' Compensation Appeals Board
WCAB Case No.: ADJ10830482

Attorneys for Petitioner,
JOSAFAT RODRIGUEZ, JR.:

Mazur & Mazur
Janice R. Mazur

Scott Shaffman

Attorneys for Respondents,
WORKERS' COMPENSATION
APPEALS BOARD, CITY OF
SANTA CRUZ et al.:

Allison J. Fairchild

Witzig, Hannah, Sanders & Reagan, LLP
Mark P. Witzig
Miranda Dugan

Rodriguez v. Workers' Compensation Appeals Board
No. H045698